UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-8268 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| CAPRI HOLDINGS LIMITED, JOHN D. | : **SECURITIES EXCHANGE ACT OF** |
| IDOL, MARILYN CROUTHER, ROBIN | : **1934** |
| FREESTONE, JUDY GIBBONS, MAHESH | : |
| MADHAVAN, STEPHEN F. REITMAN, | : **JURY TRIAL DEMANDED** |
| JANE THOMPSON, and JEAN TOMLIN, | : |
| | : |
| Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Capri Holdings Limited ("Capri Holdings or the "Company") and the members Capri Holdings' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Capri Holdings by affiliates of Tapestry, Inc. ("Tapestry").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on September 8, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Sunrise Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Tapestry, will merge with and into Capri Holdings, with Capri Holdings surviving as a wholly-owned subsidiary of Tapestry (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 10, 2023 (the "Merger Agreement"), each Capri Holdings stockholder will receive $57.00 in cash (the "Merger Consideration") for each Capri Holdings share owned.

3. As discussed below, Defendants have asked Capri Holdings' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Barclays Capital Inc. ("Barclays") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Capri Holdings' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Capri Holdings stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Todd R. Lachman has served as a member of the Board since 2017 and is Founder, President and Chief Executive Officer of the Company.

11. Individual Defendant John D. Idol has served as a member of the Board since December 2003 and is the Chairman of the Board and the Chief Executive Officer of the Company.

12. Individual Defendant Marilyn Crouther has served as a member of the Board since June 2021.

13. Individual Defendant Robin Freestone has served as a member of the Board since November 2016 and is the Lead Director.

14. Individual Defendant Judy Gibbons has served as a member of the Board since November 2012.

15.  Individual Defendant Mahesh Madhavan has served as a member of the Board since March 2023.

16.  Individual Defendant Stephen F. Reitman has served as a member of the Board since December 2011.

17.  Individual Defendant Jane Thompson has served as a member of the Board since January 2015.

18.  Individual Defendant Jean Tomlin has served as a member of the Board since March 2013.

19.  Defendant Capri Holdings is a British Virgin Islands business company and maintains its principal offices at 90 Whitfield Street, 2nd Floor, London, United Kingdom, W1T 4EZ. The Company's stock trades on the New York Stock Exchange under the symbol "CPRI."

20.  The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.  The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.  The Proposed Transaction**

22.  Capri Holdings designs, markets, distributes, and retails branded women's and men's apparel, footwear, and accessories in the United States, Canada, Latin America, Europe, the Middle East, Africa, and Asia. It operates through three segments: Versace, Jimmy Choo, and Michael Kors. The Company offers ready-to-wear, accessories, footwear, handbags, scarves and belts, small leather goods, eyewear, watches, jewelry, fragrances, and home furnishings through a distribution network, including boutiques, department, and specialty stores, as well as through e-commerce sites. It also engages in licensing agreements to the manufacture and sale of watches,

jewelry, eyewear, and fragrances. The Company was formerly known as Michael Kors Holdings Limited and changed its name to Capri Holdings Limited in December 2018. Capri Holdings was founded in 1981 and is headquartered in London, the United Kingdom.

23. On August 10, 2023, the Company and Tapestry jointly announced the Proposed Transaction:

> NEW YORK--(BUSINESS WIRE)-- Tapestry, Inc. (NYSE: TPR), a house of iconic accessories and lifestyle brands consisting of Coach, Kate Spade, and Stuart Weitzman, and Capri Holdings Limited (NYSE: CPRI), a global fashion luxury group consisting of Versace, Jimmy Choo, and Michael Kors, today announced that they have entered into a definitive agreement under which Tapestry will acquire Capri Holdings. Under the terms of the transaction Capri Holdings shareholders will receive $57.00 per share in cash for a total enterprise value of approximately $8.5 billion.
>
> This acquisition brings together six highly complementary brands with global reach, powered by Tapestry's data-rich customer engagement platform and diversified, direct-to-consumer operating model. The combined company generated global annual sales in excess of $12 billion with a presence in over 75 countries and achieved nearly $2 billion in adjusted operating profit in the prior fiscal year.
>
> Joanne Crevoiserat, Chief Executive Officer of Tapestry, Inc., said,"We are excited to announce the acquisition of Capri Holdings – uniting six iconic brands and exceptional global teams. Tapestry is an organization with a passion for building enduring brands through superior design and craftsmanship and an unwavering focus on our customers. Importantly, we've created a dynamic, data-driven consumer engagement platform that has fueled our success, fostering innovation, agility, and strong financial results. From this position of strength, we are ready to leverage our competitive advantages across a broader portfolio of brands. The combination of Coach, Kate Spade, and Stuart Weitzman together with Versace, Jimmy Choo, and Michael Kors creates a new powerful global luxury house, unlocking a unique opportunity to drive enhanced value for our consumers, employees, communities, and shareholders around the world."

John D. Idol, Chairman and Chief Executive Officer of Capri Holdings Limited, said, "Today's announcement marks a major milestone for Capri. It is a testament to all that our teams have achieved in building Versace, Jimmy Choo, and Michael Kors into the iconic and powerful luxury fashion houses they are today. We are confident this combination will deliver immediate value to our shareholders. It will also provide new opportunities for our dedicated employees around the world as Capri becomes part of a larger and more diversified company. By joining with Tapestry, we will have greater resources and capabilities to accelerate the expansion of our global reach while preserving the unique DNA of our brands."

Tapestry, Inc.'s Chief Financial Officer and Chief Operating Officer, Scott Roe, said, "The acquisition of Capri Holdings accelerates our strategic agenda and represents a significant value creation opportunity. Importantly, this combination is immediately accretive on an adjusted basis and enhances Tapestry's total shareholder return. This includes more than $200 million in expected run-rate cost synergies within three years of deal closing. Further, our diversified, strong, and consistent cash flows will allow us to continue to invest in our business and rapidly pay down debt – aligned with our commitment to maintaining an investment grade rating – while returning capital to shareholders, including today's announced 17% increase in our dividend per share. Overall, we are disciplined financial operators and allocators of capital with a relentless drive to deliver meaningful shareholder value."

**Compelling Strategic Combination and Financial Rationale**

The acquisition of Capri Holdings builds on Tapestry's core tenets as consumer-centric brand-builders and disciplined operators, accelerating its strategic and financial growth agenda. The combination:

**Expands Portfolio Reach and Diversification Across Consumer Segments, Geographies, and Product Categories**

- Establishes a powerful house of iconic luxury and fashion brands across consumer segments globally
- Builds Tapestry's portfolio in the attractive and resilient $200+ billion global luxury market for handbags, accessories, footwear, and apparel, where the company has deep experience and expertise, while providing deeper access to luxury consumers and market segments

6

- Extends global reach and geographic diversification given the Tapestry and Capri Holdings highly complementary respective positions in Asia and Europe
- Broadens Tapestry's product offering through an increased penetration of lifestyle categories, notably footwear and ready-to-wear, where Capri Holdings brings extensive expertise with further opportunity for growth

**Leverages Tapestry's Consumer Engagement Platform to Drive Direct-to-Consumer Opportunity**

- Leverages Tapestry's customer engagement platform, data analytics capabilities, and modern technology infrastructure to drive deeper consumer connections
- Creates opportunity to further leverage Tapestry's proven and profitable Direct-to-Consumer model with the goal of increasing Capri Holdings' Direct-to-Consumer penetration over time

**Unlocks Opportunity for Significant Cost Synergies**

- Expect to realize over $200 million in run-rate cost synergies within three years post-closing, supported by operating cost savings and supply chain efficiencies

**Generates Highly Diversified, Strong, and Consistent Cash Flow**

- Builds portfolio in durable, high-margin categories where Tapestry has best-in-class operational execution, enhancing strong and consistent cash flow
- Generates significant cash flow that enables rapid deleverage, while continuing to reinvest in the business

**Powers Continued Progress as a Purpose-Led, People-Centered Company**

- Brings together more than 33,000 passionate employees around the world with shared values of innovation, inclusivity, and creativity, providing new opportunities for internal career mobility and growth
- The combined company will be well-positioned to advance a comprehensive and impactful ESG strategy focused on a shared mission to drive progress toward a more sustainable, equitable, and inclusive future. Importantly, as part of this commitment, Tapestry will continue to invite its employees to contribute their

unique perspective to create a culture that is growing, dynamic, and diverse

**Creates Path to Deliver Enhanced Total Shareholder Returns (TSR)**

- Expected to deliver significant financial returns, including strong double-digit EPS accretion on an adjusted basis and compelling ROIC
- Accretive to Tapestry's existing standalone TSR plan, underscoring the company's financial discipline and commitment to value creation
- Continued commitment to capital return, with Tapestry's Board of Directors approving a 17% increase to its quarterly dividend per share, resulting in an anticipated payout of $1.40 per share or approximately $325 million in Fiscal Year 2024

**Transaction Details**

The Boards of Directors of each of Tapestry, Inc. and Capri Holdings Limited have unanimously approved the transaction. The transaction is anticipated to close in calendar year 2024, subject to approval by the Capri Holdings shareholders, as well as the receipt of required regulatory approvals, and other customary closing conditions.

The all-cash offer for Capri Holdings of $57.00 per share represents a premium of approximately 59% to the 30-day volume weighted average price ending August 9, 2023. The total enterprise value of the transaction of approximately $8.5 billion represents a 9x adjusted EBITDA multiple on a trailing-twelve-month basis, or 7x including expected synergies.

The transaction is not subject to a financing condition. Tapestry has secured $8.0 billion in fully committed bridge financing from Bank of America N.A. and Morgan Stanley Senior Funding, Inc. The purchase price of approximately $8.5 billion is expected to be funded by a combination of senior notes, term loans, and excess Tapestry cash, a portion of which will be used to pay certain of Capri's existing outstanding debt.

Importantly, Tapestry has engaged with the rating agencies and is committed to a solid Investment Grade Rating. Tapestry will suspend its share repurchase activity to prioritize de-leveraging via debt reduction and anticipates reaching a leverage ratio of below 2.5x Debt/EBITDA within 24 months post-close.

Furthermore, Tapestry is instituting a long-term leverage target of under 2.5x Debt/EBITDA.

**Advisors**

Morgan Stanley & Co LLC is serving as Tapestry, Inc.'s exclusive financial advisor and Latham & Watkins LLP is its legal advisor. Capri Holdings Limited's financial advisor is Barclays and its legal advisor is Wachtell, Lipton, Rosen & Katz.

\* \* \*

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Capri Holdings' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25. On September 8, 2023, Capri Holdings filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by Capri Holdings management and relied upon by Barclays in its analyses. The Proxy

9

Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts in May and August 2023 (collectively, the "Company Projections") and provided them to the Board and Barclays with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Capri Holdings management provided to the Board and Barclays. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Adjusted EBIT, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. The Proxy Statement also fails to explain why the Unlevered Free Cash Flow for fiscal year 2023 and the first quarter of 2024 was not included in the Proxy Statement.

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Barclays' Financial Analyses*

32. With respect to Barclays' *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for the companies selected by Barclays for the analysis; and (ii) the inputs and assumptions underlying the selection of the range of EV/LTM Adjusted EBITDA multiples of 8.0x to 10.0x.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

33. With respect to Barclays' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for the Company as of March 31, 2028; (ii) the inputs and assumptions underlying the inputs and assumptions underlying the range of perpetual growth rate of 2.0%; (iii) the inputs and assumptions underlying the discount rates ranging from 11.75% to 13.75%; (iv) the weighted cost of capital of the Company; (v) Capri Holdings' net debt as of July 1, 2023; and (vi) the number of fully diluted outstanding shares of Capri Holdings' common stock.

34. With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics of each company selected by Barclays for the analysis; (ii) the basis for selecting a reference range of 6.6x to 8.6x multiples for EV/FY2024E Adjusted EBITDA and a reference range of 9.9x to 11.9x multiples for P/FY2024E Adjusted EPS.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement

12

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Capri Holdings within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Capri Holdings, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Capri Holdings, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Capri Holdings, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 19, 2023                     **MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*